# CHARLESTON.

## AVERILL v. BOYER.

Submitted September 7, 1915.    Decided September 28, 1915.

1.  DAMAGES—*Pleading—Ad Damnum Clause—Surplusage.*
    Where the *ad damnum* clause prescribes a true and false measure of damages, the latter will be treated as surplusage.  (p. 643).

2.  FRAUD—*Evidence of Preliminary Negotiations—Admissibility.*
    In an action for fraud and deceit practiced in the exchange of real estate consummated by deeds, evidence of preliminary negotiations is admissible to show the inducement for such exchange, though the agreement therefore is verbal.  (p. 644).

3.  SAME—*Measure of Damages.*
    In such action, the measure of damages is the difference in values between the lot as represented and as fraudulently conveyed by the deed delivered, plaitniff not electing to rescind.  (p. 646).

Error to Circuit Court, Kanawha County.

Action by Mary J. Averill against Lulu D. Boyer. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*J. W. Kennedy* and *Murray Briggs,* for plaintiff in error.

*Linn & Byrne,* for defendant in error.

LYNCH, JUDGE:

Plaintiff and defendant, severally owning real estate in Kanawha county, began negotiations in August, 1906, for an exchange of properties; Mrs. Averill's being a tract of 63 acres located along the Kanawha river above Charleston, Mrs. Boyer's consisting of lots in Charleston, one of them fronting on Morris street near its junction with Baines street. The negotiations were finally consummated by an exchange of deeds May 25, 1907. Claiming defendant fraudulently and deceitfully included in her deed part only of the Morris street lot, though pretending to convey all of it pursuant to the final agreement, plaintiff brought trespass on the case for damages, and recovered a verdict and judgment for $1136. This judgment defendant asks us to reverse on writ of error, for various reasons assigned by her.

The first assignment relates to the court's action on the demurrer of defendant, whereby she challenged the sufficiency of the declaration. Stating in detail, as it does, the different parleys had by the parties or their representatives culminating in the final agreement, and describing the Morris street lot as "fronting 40 feet on Morris street, running back by parallel lines a distance of about 115 feet, and known as the Hewes lot" and compliance by plaintiff by the execution and delivery of her deed and acceptance of the same by defendant, together with possession of the land conveyed, the declaration then charges that "defendant, professing to be acting in good faith and carrying out the agreement aforesaid on her part as modified as aforesaid and to be conveying the whole of the property on Morris street which she had so agreed to convey, executed and acknowledged in due form by herself and her husband and delivered to the plaintiff two deeds, each dated February 26, 1907, one conveying to the plaintiff the aforesaid lot on Caroline street and the other conveying a part of the said lot on Morris street, towit, 40 feet fronting on Morris street and running back by parallel lines 80 feet, leaving out of the said conveyance, as she the defendant well knew, a part of the said Morris street lot at the rear thereof, towit, 40 feet by 35 feet, the said defendant then and there falsely and deceitfully contriving and intend-

ing to deceive and impose upon the plaintiff and to cause her to believe that the said last named deed conveyed to her the whole of the said Morris street lot, then and there falsely and deceitfully and fraudulently represented to the plaintiff that the said last named deed conveyed the said Morris street lot, according to the boundaries thereof first herein above set forth; and, so believing and being thus imposed upon, the plaintiff was induced to accept, and did accept, the said two deeds, and cause the same to be admitted to record, and that she was at the time, and for a long time thereafter, towit, till the —— day of ————, 1908, wholly ignorant of the fact that she had been deceived and defrauded as aforesaid''. Though in other particulars the declaration is charged to be insufficient, the only objection argued and apparently deemed material relates to the *ad damnum* clause, whereby plaintiff avers that ''by reason of the premises she has been fraudulently deprived of the rear end aforesaid of the said Morris street lot, of great value, towit, of the value of $2500, and has sustained great damage, towit, $2500, and therefore she sues''. The criticism directed by defendant against this clause of the declaration is that it prescribes a fallacious measure of damages, in that the damages are based on a comparison of the value of the part of the lot conveyed by the deed with the value of the lot if it had been conveyed as represented. But whether the declaration is demurrable because it prescribes an erroneous admeasurement of damages need not now be determined. For, while it charged deprivation of the rear end of the lot, of great value, it also charged that, by reason of the fraud and deceit practiced by defendant, plaintiff has sustained great damage, wherefore she sues. So that, if the clause prescribed two inconsistent standards for the computation of damages, one correct, the other fallacious, the latter properly may be treated as surplusage. The demurrer was therefore properly overruled.

By the second assignment, defendant presents for consideration a challenge of all the evidence introduced by plaintiff, on the theory that, as the declaration limited the fraud and deceit practiced by defendant to the actual exchange of deeds, proofs of parleys pending the preliminary negotiations should not have been admitted over objection by

defendant, and, being so admitted, ought to have been excluded upon her motion, duly made and denied. This objection vitally affects the very foundation on which rests the judgment rendered in this case, and finds support, if any, on the averments in the declaration already quoted at length, which, according to defendant's construction, limit the fraud and deceit charged, if any, to the moment the deeds were interchanged. This contention, however, ignores allegations of preceding negotiations between the parties culminating in and consummated by such exchange. The gist of the complaint was that, although defendant represented the dimensions of the Morris street lot as 40 by 115 feet and agreed to convey to plaintiff a lot having these dimensions, she thereafter, fraudulently contriving and intending to deceive the plaintiff and to cause her to believe the deed conveyed the whole of said lot according to the boundaries averred, falsely represented that the conveyance did include the lot according to such boundaries, and, so believing and being thus imposed upon, plaintiff was induced to accept the deed. The sanction of an argument limiting proof to the final stage or conclusion of a fraudulent transaction, regardless of the previous negotiations of which that transaction was the fruition, would operate as an elimination of the substance and substitution in its stead of a mere shadow. Properly construed, the declaration authorized proof of the transaction from the inception to the final consummation of it.

Nor is there more merit in the further contention that, as the transaction involved real estate, the contract, being verbal and therefore void under the statute of frauds, can not be made the basis of a recovery in this action. This contention effectually would operate as a denial of the right to demand damages after the execution and delivery of the deed, however fraudulent and deceitful may have been the preceding negotiations if verbal, though such deed effectuates the fraud practiced by either party upon the other. The mere statement of the argument refutes it. Surely, such is not the law. Plaintiff does not seek enforcement of the verbal contract. She seeks compensation for the loss sustained by reason of defendant's fraud in withholding part of the lot

while pretending to convey all of it pursuant to the agreement entered into between them.

Again, recurring to the question of the proper measurement of damages in a case of this character, defendant insists that if the lots conveyed to plaintiff were equal in value to the land conveyed by her she has suffered no loss, even if it be true, as claimed by her, defendant did not include in her deed the strip located at the rear of the Morris street lot. To support this proposition, defendant cites *George* v. *Hesse,* 100 Tex. 44; *Rockefeller* v. *Merrett,* 40 U. S. 666; *Smith* v. *Bolles,* 13 U. S. 125; *Sigafus* v. *Porter,* 179 U. S. 116; *Reynolds* v. *Franklin,* 44 Minn. 30. These citations seem so to hold. But the doctrine promulgated by them is decidedly against the preponderant weight of authority generally to the effect that, in cases of this character, the true measure of damages is the difference between the real value of the property received and what it would have been worth had it included the entire quantity represented. *Stroup* v. *Hewit,* 90 Kan. 200; *Speed* v. *Hollingsworth,* 54 Kan. 436; 14 Am. & Eng. Enc. Law 182; *Morse* v. *Hutchins,* 102 Mass. 440; *Nysewander* v. *Lowman,* 124 Ind. 584; *Herfut* v. *Cramer,* 7 Col. 483; *Hecht* v. *Metzler,* 14 Utah 408; *Ward* v. *Reynolds,* 32 Ala. 384; *Barbour* v. *Flick,* 126 Cal. 628; *Drew* v. *Bell,* 62 Ill. 164; *Likes* v. *Baer,* 8 Ia. 368; *Vaupel* v. *Mulhall,* 141 Ia. 365; *Boyce* v. *Gingrich,* 154 Mo. App. 198; *Bunther* v. *Ullrich,* 82 Wis. 222; *Page* v. *Johnston,* 205 Mass. 274.

While one line of authorities saves the purchaser from loss, the other gives him the benefit of his bargain, whether it arises out of a contract of purchase or out of an exchange of properties. As stated in 20 Cyc. 132: "It has frequently been laid down that, in an action based on fraud and deceit in the sale or exchange of property, if plaintiff retains the title and does not offer to rescind, the measure of damages is the difference between the actual value of the property at the time of the sale or exchange and what it would have been worth had it been as represented, or what its value was represented to be; and that this measure of damages applies without regard to the price paid or the property given in exchange by the party defrauded; for it can not always be said that plaintiff has suffered no injury because the bargain induced by

the fraud was not a bad one and he has received the worth
of his money.   Plaintiff's right of recovery is determined by
the position which he would have occupied had there been no
fraud, and he is entitled to the benefit of his bargain on this
basis''.   To show the generality of the doctrine stated in the
text quoted, the author cites numerous cases from many states,
including Alabama, Connecticut, Georgia, Illinois, Iowa,
Maine, Maryland, Massachusetts, Michigan, New Hampshire,
New Jersey, New York, Ohio, Pennsylvania, Vermont and
Wisconsin.   So, in an Indiana case, where the vendor to in-
duce a sale represented that on the land was a house of certain
dimensions and description, the measure of damages for lack
of such house, in an action based on such false representation,
was held to be the amount of the difference in value of the
land with and without such a house at the time of sale, and
not the amount to be expended in the construction of one like
it.   *Sangster* v. *Prather,* 34 Ind. 504.   Such, as we conceive,
is the more sound and just doctrine, and not that for which
defendant contends.

Again, defendant seeks reversal upon the ground that the
evidence does not warrant rendition of any judgment against
her.   While this contention has some merit, it can not reason-
ably be held that, though somewhat meager, the evidence was
wholly insufficient to sustain the verdict and judgment.   The
illness of Mrs. Averill prevented her from seeing the Morris
street lot prior to the execution and delivery of the deed.
Harless, her brother-in-law, conducted the negotiations leading
up to the exchange of deeds for the properties.   But she was
present when the verbal agreement for the exchange was con-
cluded, and then heard the representations by defendant as
to the lot dimensions and the inclusion therein of certain out-
buildings and small fruit trees located on that portion not
included in the deed as delivered.   These buildings, as appears
from the evidence, were within the lot depth as extended back
115 feet from Morris street.   This ground, with the buildings
thereon, then was, and, so far as otherwise appears, still is,
owned by defendant.   The substantial question presented by
the pleadings and proof, and upon which plaintiff predicates
her right of recovery, is, did defendant represent the dimen-
sions of the Morris street lot, expressly or in effect, to be 40

by 115 feet? Mrs. Averill, Mrs. Calvert, plaintiff's daughter, and Harless agree in testifying that defendant stated the lot agreed on in the exchange included the buildings standing on that part of it not included in the Boyer deed, and was bounded on its rear end by a fence then existing and running parallel with and 115 feet from Morris street. To this testimony is opposed that of Mrs. Boyer. She stated that she pointed out to Harless the side line of a lot adjoining the Morris street lot in the rear (owned by her) and fronting on Baines street (the streets and lots being at right angles) as the rear line of the Morris street lot, near which also stood a small building, a tree and grape arbor. But, though asked the direct question whether she did in fact represent to Mrs. Averill and Harless the dimensions of the lot to be conveyed by her as 40 by 115 feet, her only reply was that she told both of them the lot was a small one, to which they replied "They didn't care if it was, that they wanted a nice house, and they would never want a garden, and didn't care anything about the lot; the house was what they wanted".

Nor is Mrs. Averill's statement, as a witness, that she did not read or hear read the deed for the lot, when delivered to her, denied by any witness, except indirectly by Woodroe, the attorney who wrote it, who testified that when at the home of Mrs. Boyer, where he was summoned for the purpose of preparing the papers, he made a sketch of the lot and stenographic notes of its description as agreed on by the parties then present (Harless and Mrs. Averill being among the number), which he said he then read to them and to which no objection was made, and that thereafter he prepared the deed in accordance with the sketch and notes so made. Nor is Mrs. Averill's statement that she did not read or hear read the deeds when taken by Woodroe to defendant's residence, or afterwards, denied by him or any other witness, although he did testify that he read it when delivered some months later in the presence of the parties to the deed and Mrs. Averill's son and daughter, Woodroe having had it in his possession in the meantime with the consent of all the interested parties. There is some proof, however, to the effect that the son of the plaintiff, then present, after reading the deed, informed his mother it was according to the

contract. She testified that she could not read except with great difficulty, because of lack of education.

But any doubt arising upon the testimony, so far as it is apparently contradictory, the jury resolved in favor of the plaintiff; and it can not reasonably be said their finding was palpably wrong or against the plain preponderance of the proof, or that it was insufficient to support the verdict and the judgment thereon rendered. It was within the province of the jury to weigh the proof and draw its own conclusion; and, having performed that duty, this court can not interfere unless the finding was manifestly erroneous.

. Finally, defendant complains of instructions given at the request of plaintiff, and instructions requested by defendant and refused. Those given seem to state correct principles of law applicable to the facts in issue, and, therefore, were unobjectionable. Those refused, if given, would have conflicted directly with what has been said herein as to the sufficiency of the evidence to support the verdict and judgment thereon, and as to the admissibility of evidence regarding the negotiations of the parties resulting in the exchange of properties.

Finding no reversible error, our conclusion is to affirm the judgment; and such will be the order entered here.

*Affirmed.*