# CHARLESTON.

H. K. OSBORNE v. R. E. L. HOLT and J. E. WOODSON.

Submitted November 14, 1922.   Decided November 28, 1922.

1. FRAUD—*Evidence of Similar Representation to Others Admissible.*

   Evidence of similar representations, made to others, by one soliciting subscriptions to the capital stock of a corporation, to induce purchases of such property, are admissible in a suit for damages by one who purchases stock on the faith of fraudulent representations, not as evidence of the statements made to the plaintiff in such suit, but as showing the inclination of mind of the party charged with making the representations on the subject.   (p. 414).

2. SAME—*False Representations Without Knowledge Actionable.*

   One who represents that a certain condition exists with the expectation that another will act thereon, when in fact he has no knowledge in regard thereto, will be as liable to another who deals with him upon the basis of such representation,

should it turn out to be false, as though he knew of the falsity thereof at the time it was made.   (p. 415).

3.   SAME—*False Statements as to Corporate Property to Induce Subscription to Stock Actionable.*

An expression of opinion upon the part of one seeking to sell stock in a corporation as to the future prospects of the corporation, or as to the value of its assets, will not ordinarily be the basis of an action for damages for fraud and deceit, should these expressions be not thereafter realized; but statements made as a basis for securing such subscriptions to the capital stock, that the corporation owns in fact certain property, and in the case of coal mines, that the veins of coal are of a certain thickness, and that some of them have been opened up and the appearance thereof thus shown, and that the coal therein is perfectly clean, are not expressions of opinion, and should such statements turn out to be in fact false they will form the basis of an action for damages by one who makes a subscription to the capital stock of such corporation upon the faith thereof.   (p. 416).

4.   SAME—*Remedies Available; Subscriber to Stock Held Not Estopped to Sue.*

One who subscribes to the capital stock of a corporation upon the faith of representations made to him by a promoter of such corporation may, if said representations prove to be false, affirm the contract of subscription and sue for the resulting damage, or he may repudiate the contract, deliver back the stock received by him, and maintain a suit to recover the money paid by him therefor.   In case he affirms the contract, he will not be estopped to sue for damages caused by the false representations because he participated in meetings of the stockholders of the corporation.   (p. 418).

Error to Circuit Court, Mercer County.

Action by H. K. Osborne against R. E. L. Holt and another. From a judgment for plaintiff, defendants bring error.

*Affirmed.*

*W. H. Malcolm, Sanders, Crockett & Fox* and *Hartley Sanders,* for plaintiffs in error.

*John R. Pendleton* and *John M. McGrath,* for defendants in error.

RITZ, JUDGE:

The plaintiff brought this suit to recover damages claimed to have been sustained by him because of false and fraudulent representations made to him by the defendants in the purchase of certain stock. He had judgment in the court below, and the defendants bring the case here by writ of error.

It appears that in the spring of 1917 the defendants had an option on a tract of about one thousand acres of land in Lewis county which was supposed to be underlaid with valuable seams of coal. This option provided that they might purchase this land for the sum of one hundred thousand dollars. For the purpose of taking advantage of the option they determined to form a corporation in which stock would be sold to raise the money to pay for the land and carry on operations upon it. With this view they solicited subscriptions to the stock of the corporation to be formed for the purposes aforesaid, and procured such a subscription from the plaintiff, as well as from others. The corporation was subsequently formed in accordance with the design of the defendants, and the plaintiff's stock issued to him in accordance with his subscription, and he paid therefor the par value thereof, to-wit, the sum of one thousand dollars. He shows that at the time and just prior to making the subscriptions, and as an inducement thereto, defendants represented to him that the option covered one thousand acres of land, and that the same was underlaid with three seams of coal of the thickness of six, nine and eleven feet respectively; that the said coal was clean; that the eleven-foot seam was opened up upon the property, and that there were eleven feet of clean coal there that could be seen. As to the character of the coal in the other two seams, it does not appear that any representations were made, except as to the thickness thereof, and it does not appear that the defendants represented that either of these seams were opened upon the property. In addition to making these representations to the plaintiff, the defendants, in procuring subscriptions to the capital stock, made the same representations to a number of other parties, and this was permitted to be shown upon the trial of the case. The com-

pany formed for the purpose took over the property, and operations were begun thereon, and carried on for a few months. It was discovered that there was no eleven-foot vein of coal upon the property; that the vein which had been opened up, instead of being eleven feet in thickness, was about seven feet in thickness, and that, instead of being clean coal, it was coal filled with slate and bone so as to only leave something like two feet of coal distributed in layers of varied thicknesses through the seven feet of thickness of the same. The company borrowed some five thousand dollars for the purpose of assisting in carrying on the operations, and executed a deed of trust upon the property to secure the repayment of this sum. After several months the operations proved so unprofitable that it was found necessary to abandon them entirely. The coal produced was not merchantable, and the cost of production was so high that instead of being a profitable venture, a loss was incurred upon every ton produced. The holder of the lien for five thousand dollars, above referred to, foreclosed the deed of trust securing the same, and the property sold for just about enough to discharge this debt, and the company was left without anything. The plaintiff then instituted this suit against the defendants who secured his subscription to the stock of said company, and claimed to be entitled to recover the damages sustained by him on the ground that said subscription was induced to be made by false representations made to him by the defendants. On the trial of the case the plaintiff testified to representations made to him as above stated, and introduced a number of other witnesses who testified that similar representations had been made to them by the defendants for the purpose of inducing them to subscribe to the stock of said company. He also proved the facts above stated in regard to the actual thickness of said seam of coal, and as to its inferior quality, and the foreclosure of the lien against the property rendering the stock valueless. Upon this state of the case the defendants moved the court to strike out the plaintiff's evidence and direct a verdict in their favor. This motion, the court overruled. The defendants declined to introduce any evidence,

and the plaintiff moved the court for an instruction to find in his favor the damages sustained by him, which instruction the court gave over the objection of the defendants. The jury found a verdict in the plaintiff's favor for the sum of $1256.33. The motion to set aside this verdict was overruled, and the judgment complained of rendered thereon.

The defendants insist that they are entitled to have this judgment reversed on this writ of error; first, upon the ground that the court admitted improper evidence to go to the jury, that is, evidence of representations made to other parties similar to those made to the plaintiff; second, upon the ground that it does not appear that the defendants knew that the representations made by them were not true at the time they were made; third, on the ground that the representations proved to have been made amount to no more than expressions of opinion, and as such could not be the basis of a right of recovery in an action for fraud and deceit; fourth, upon the ground that the plaintiff participated in a meeting of the stockholders of the corporation whose stock was sold to him by the defendants, at which meeting an order was passed to the effect that "several stockholders have investigated the property in question and authorized the purchase of it"; and lastly, that even though the representations proved to have been made might be construed as representations of fact, and not expressions of opinion, they were not necessarily susceptible of that construction, wherefore the question, what construction should be placed upon them under the circumstances, was for the jury, and the court should have submitted that question to the jury instead of directing a verdict in the plaintiff's favor. We will discuss these questions in the order above stated.

Was it error for the court to admit in evidence testimony of witnesses to show that representations were made to them similar to those made to the plaintiff, which induced his subscription to the stock? It is argued that it does not appear that there was any purpose on the part of the defendants that these representations should be communicated to the plaintiff. In fact, it appears that some of them were made

after the plaintiff made the subscription to the stock of the proposed corporation. It is quite true that as a basis for recovery in this case this evidence was not competent. The plaintiff did not, however, introduce this evidence for the purpose of basing a recovery thereon. The recovery sought by him was based upon the representations made directly to him by both of the defendants. This evidence was introduced simply for the purpose of showing scienter, or the likelihood that the representations as testified to by the plaintiff were actually made by the defendants. Of course, in the absence of any denial upon their part that they did make the representations to which the plaintiff testified, this evidence could have little weight in the case, but at the stage of the trial at which it was offered, of course, the plaintiff could not tell that the defendants would present no denial of the evidence offered by him. It seems to be held that in a suit of this character evidence of other misrepresentations made by the defendant to persons other than the plaintiff to induce similar purchases of property are admissible as showing the inclination of the defendant's mind on the subject of the representations. *Wilson* v. *Carpenter,* 91 Va. 183, 50 Am. St. Rep. 824; *Trogdon* v. *Commonwealth,* 31 Gratt. 862; *Miller* v. *White,* 46 W. Va. 67; 10 R. C. L., Title "Evidence" 105.

It is quite true that there is no evidence in this case showing positively that the defendants knew that the representations made to the plaintiff were false at the time they made them. It may be that they did not have any positive knowledge as to the conditions which existed upon the property at that time. This can make little difference, however, for it is very uniformly held that if it is represented that a certain state of facts is true, and this representation is made for the purpose of inducing another to act theron, or under such circumstances as that the party making it must know that the other is likely to act thereon, and he does act thereon to his disadvantage, he will be entitled to recover the damages suffered by him, notwithstanding the party making the representation had no actual knowledge of the real conditions at the time. He is under a duty to know that the things he rep-

resents as facts are in fact true at the time he makes the representation. It is no excuse for him to say that he did not know they were false. *Crislip* v. *Cain,* 19 W. Va. 438; *Tolley* v. *Poteet,* 62 W. Va. 231; *James* v. *Piggott,* 70 W. Va. 435; *Stout* v. *Martin,* 87 W. Va. 1.

The proposition most insisted upon by the defendants is that the representations testified to by the plaintiff as being made to him by the defendants constitute under the circumstances no more than an expression of opinion upon their part as to the conditions that existed upon the land, and it is insisted that if this is so, then there is no right to recover. It is quite true that if the statements relied upon are no more than the expression of the opinion of the party who makes them, they cannot be the basis of a suit to recover damages. In order to form the basis of such a suit they must be representations of existing facts, or rather representations that certain things exist; and it is likewise true that if two interpretations may be put upon the language used when considered in connection with the circumstances, one of which would make such language constitute representations of fact, and the other merely expressions of opinion, it must ordinarily be left to the jury to say which interpretation is the proper one. The parties do not disagree as to this proposition of law. Plaintiff, however, asserts that the representations testified to by him, not being contradicted or in any way questioned, cannot be construed as anything else but representations that a certain state of facts existed at the time, and are not at all susceptible of the construction that the defendants were simply expressing their opinion of those conditions. These representations were that the property was underlaid with three seams of coal of certain thicknesses. There is nothing in connection with this to indicate that the defendants were expressing any opinion upon this question. They affirm simply as matter of fact that there were three seams of coal on the land, and affirmed the exact thickness of each of them. The only fair assumption that could be drawn from this statement was that the defendants had seen these three seams of coal, and had measured the thickness thereof,

or that they were making those statements upon the faith of information, for which they were willing to be responsible. The fact that they gave the thickness of each of the seams of coal would indicate to a party to whom the representations were made that they had made actual observation thereof, in the absence of anything to qualify the statement. But they went further than this, and they told the plaintiff that the eleven-foot seam was opened up on the property, and that it was plain to be seen and was perfectly clean coal. This statement could not be considered for a mement as an expression of opinion. They did not show that they were informed by somebody that the seam of coal had been opened up on some other property, and that it measured eleven feet, and was perfectly clean, and from this fact they judged that the same conditions existed upon this property. The representation was that this seam was opened on this particular property; that it measured eleven feet, and that the coal was perfectly clean. The defendants may have believed this at the time, and the fact that they invested heavily in the venture would indicate that they did believe it, but as before stated, this cannot affect the question of their liability to the plaintiff. It is true he knew that they were not experienced in the business of mining coal, but that fact would not justify them in making a statement which was untrue to the plaintiff for the purpose of inducing action upon his part. The case of *Holbrook* v. *Conner,* 60 Me. 578, 11 Am. Rep. 212, relied upon by the defendants, does not justify the conclusion which they seek to draw therefrom. In that case the plaintiff was induced to take stock in an oil company, and he brought suit and alleged as a basis therefor certain representations made to him which induced his purchase. The court there held that these representations, under the circumstances, were no more than expressions of opinion, but what were the representations, and what were the circumstances under which they were made? The representations were that the land was good oil land, and at the time the statement was made the party making it pointed to wells not a great way off on other lands as proof of this statement. The plaintiff knew

that the land had never been tested, and he knew that operations upon it might prove unsuccessful. He testified. that he knew he was making a speculation, and that he might suffer loss if this land did not turn out as well as near-by lands. Of course the statements there made were but expressions of opinion. The representation was that it was good oil land, and the basis of this representation was given to the plaintiff at the time, that is, that near-by lands were producing oil in paying quantities. If in this case the defendants' representations had been that this tract of land was valuable coal land and had valuable coal seams upon it because nearby lands had such valuable seams, then the plaintiff would have known that the defendants were only expressing their opinion as to what was in this land based upon conditions existing elsewhere, and if those conditions did in fact exist, then it would be nothing more than an expression of opinion upon the part of the defendants. We are clearly of the opinion that the representations here were to the effect that certain things actually existed, and were in no sense expressions of opinion. There was, therefore, no question to be submitted to the jury, and the court did not err in directing a verdict for the plaintiff.

There is no more merit in the defendant's other contention that the plaintiff is estopped because he attended a meeting of the stockholders of the corporation, at which a resolution was passed reciting that a number of the stockholders had made an investigation of the land, and found that it contained these valuable coal deposits. This suit is not for a rescission of the contract. The plaintiff affirms the contract and sues for damages for the false representations. This he may do in a case of this character. He had the election to recover the purchase price, or he could affirm the contract and sue for the damages resulting to him because of such false representations. First Fletcher's Encyclopaedia of Corporations. § 166.

It follows from what we have said that the judgment complained of will be affirmed.        *Affirmed.*