# CHARLESTON.

E. W. HORTON *v.* E. T. TYREE

(No. 6035)

Submitted September 14, 1927. Decided October 4, 1927.

1. FRAUD—*Person Inducing Contract by False Representations, Which He Has Duty to Know Are Untrue, is Liable as Though He Knew Them to be False.*

   Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in con-

templation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false. (p. 242.)

(Fraud, 26 C. J. § 41.)

2.   SAME—*Instruction Based on Fraudulent Representations of Fact is Good, Though Containing Additional Representation Which May be Mere Opinion and Tells Jury They Must Believe Both.*

An instruction based upon a fraudulent representation of fact is good, although it contains an additional representation which may be in effect a mere opinion and tells the jury that they are to believe both representations before the plaintiff can recover. (p. 242.)

(Fraud, 27 C J. § 220.)

3.   SAME—*That Representations Complained of Should be Sole Inducement Moving Plaintiff is Not Necessary, and if Representations Contributed, They Are Sufficient, Though Written Agreement Also Aided.*

It is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff. If the representations contributed to the formation of the conclusion in the plaintiff's mind, that is enough, although a written agreement, which was executed at the time of the purchase, to take plaintiff's stock at the end of ninety days at a certain price, also operated in bringing him to the same determination. (p. 245.)

(Fraud, 26 § 76½.)

4.   TRIAL—*In View of Instructions to Consider Interest of Witnesses, Refusal to Instruct That if Witness Willfully Testified Falsely to Material Fact, All His Testimony Could be Disregarded, Held Not Error.*

Considering the issues of the evidence in this case, and that the jury were instructed to take into consideration the interest of any witness in the result of the suit; his bias or prejudice, if any be shown; his demeanor upon the witness stand, and to give to his evidence such weight as they believe it entitled to, it was not error for which the case will be reversed to refuse to give an instruction, at defendant's instance, to the effect that if the jury believed that any person willfully testified falsely as to any material fact, that they have a right to disregard all the testimony of such witness so testifying falsely, or to give his testimony, or any part

thereof, such weight only as in their opinion the same may be entitled to.   (p. 246.)

(Appeal and Error, 4 C. J. § 3031; Trial, 38 Cyc. p. 1717.)

5.   EVIDENCE—*Evidence of Defendant's General Good Character for Honesty is Inadmissible in Action for Fraudulent Representations.*

In this case evidence of the general good character of the defendant for honesty and integrity is inadmissible.   The character of the transaction must be ascertained by its own circumstances, and not the character of the parties.   (p 247.)

(Evidence, 22 C. J. §§ 561, 564.)

6.   FRAUD—*Generally, Evidence of Subsequent Acts and Dealings of Persons Charged With Fraud is Admissible, if Tending to Establish Fraud Charged, or Fraudulent Intent.*

As a general rule, evidence of the subsequent acts and dealings of a person charged with fraud is admissible if it tends to establish the fraud charged, or as a circumstance to show fraudulent intent.   (p. 250.)

(Fraud, 27 C. J. § 181.)

7.   SAME—*Record in Receivership Action, in Which Property Purchased by Plaintiff Was Sold, Held Admissible in Action for Fraud in Sale of Stock.*

It was not error to admit in evidence a record of the receivership action, in which the property purchased by the plaintiff was sold, to show the final disposition of the property.   (p. 251.)

(Fraud, 27 C. J. § 181.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by E. W. Horton against E. T. Tyree.   Judgment setting aside a verdict for plaintiff and awarding a new trial, and plaintiff brings error.

*Reversed; judgment here.*

*Russell S. Ritz* and *George Richardson, Jr.,* for plaintiff in error.

*Strother, Sale, Curd & Tucker* and *W. E. Ross* and *French, Easley & Easley,* for defendant in error.

WOODS, JUDGE:

On a former appeal in this case, we held that the declaration stated a good cause of action for an action of trespass on the case to recover damages sustained in the purchase of coal stock, at the instance and on the false and fraudulent representations of the defendant. *Horton* v. *Tyree,* 102 W. Va. 475. The grounds and facts upon which the case was predicated were therein set out at length in the opinion of the court, making further recital thereof unnecessary here. The case was tried to a jury, resulting in a verdict for the plaintiff. This verdict on motion of the defendant was set aside by the court and a new trial awarded. The plaintiff challenges the correctness of this action by the present appeal. The major errors assigned are that the court erred (1) by setting aside the verdict, and (2) in refusing to render judgment in favor of the plaintiff against the defendant on said verdict.

The issues involved were sharply drawn by the instructions submitting the case to the jury. At the instance of the plaintiff the jury were told in instruction No. 3, if they believed from the evidence in the case that the plaintiff subscribed for and became the purchaser of the 89 shares of capital stock in the Mountain State Coal Corporation, from C. T. Benton at the price of $8,900.00, and believed further from the evidence that in the negotiations leading up to the purchase of said stock the defendant Tyree, in substance represented and stated to the plaintiff that said stock was a good buy; that the engineer's reports on the property showed it to be worth six for one, and if they believed said statements and representations were false, and that the plaintiff believed them to be true and relied thereon, and on account thereof was induced and led to subscribe for and become the purchaser thereof, then the plaintiff was entitled to recover from the defendant the difference between what the stock was actually worth at the time of the purchase and the amount which the plaintiff paid therefor, together with interest thereon to date. The vice of this instruction, maintains the defendant, is that it fails to state that the defendant knew his

representations were false at the time of his making them, or that they were made by him with reckless disregard of the truth.

This question has been settled in this court by numerous adjudications. These cases announce the rule to be that where one to whom a representation has been made as an inducement to enter into a contract, he has the right to rely upon it as true *quoad* the maker and need make no further inquiry. If he does so rely upon it, and it turns out to be untrue, and he is injured thereby, the party making the representation is liable for the damages, which may be recovered in an action of deceit. *Hervey v. Crouch,* 97 W. Va. 161; *Osborne v. Holt,* 92 W. Va. 410; *Staker v. Reese,* 82 W. Va. 764. The essential elements of such action, as announced in the *Hervey* case, are: (1) that the act claimed to be fraudulent was the act of defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it. Whether the defendant made the statement imputed to him, knowing it to be materially untrue, and for the fraudulent purpose of deceiving the plaintiff as charged in the declaration, we need not inquire, for it is not, in order to maintain this action, indispensable that the defendant be shown to have known the statement was false. For it is elementary doctrine that a false representation may be made *scienter,* so as to afford a right of action in damages, in contemplation of law, in any of the following ways: (1) with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known if he did not know of its falsity. *State v. Berkeley,* 41 W. Va. 458; 1 Biglow, Frauds, 509. A representation in respect to a matter, with the intent to influence the conduct of another, implies necessarily the belief of the party making it that the statement is true. If the fact be within his means of knowledge, and he have no knowledge of the fact, a jury would be authorized to believe that the statement was knowingly false. The question of whether the defendant should know the falsity of his representations

was squarely met in *Osborne* v. *Holt, supra.* It was there held that one who represents that a certain condition exists with the expectation that another will act thereon, when in fact he has no knowledge and regard thereto, will be as liable to another who deals with him on the basis of such representation, should it turn out to be false, as though he knew of the falsity thereof at the time it was made. "He is under a duty to know", said the court, "that the things he represents as facts are in fact true at the time he makes the representation. It is no excuse for him to say that he did not know they were false," citing in support thereof the decided cases of *Stout* v. *Martin,* 87 W. Va. 1; *James* v. *Piggott,* 70 W. Va. 435; *Tolley* v. *Poteet,* 62 W. Va. 231; *Crislip* v. *Cain,* 19 W. Va. 438.

The defendant makes the further objection to the instructions that the plaintiff's right is based upon the supposed statement that the stock "was a good buy", as well as upon the statement that the investment "would pay a dividend of 25%". The point made is that these quoted statements were opinions and not statements of fact. Ordinarily this is true when men are dealing at arms length, but there are exceptions to this rule, as where a seller misrepresents the quality or value of the thing sold to be other than it is, in some particulars, which the buyer has not equal means with himself of knowing. *Camicia* v. *Iafollo,* 89 W. Va. 422; *Vernon* v. *Keys,* 12 East. 637; 20 Cyc. p. 58, and cases cited in Notes 51 and 52. But, it is often a close question whether a statement or representation put forward by the seller to induce a purchase is a statement of fact or the mere expression of an opinion as a consideration of the decided cases amply show. The modern cases show a strong tendency to refuse to extend the rule further than it has been carried by previous decisions with respect to "dealer's talk"; the courts generally taking the view that a vendor guilty of a representation made with intent to deceive should not be heard to say that the purchaser ought not to have believed him. 20 Cyc. 62; *Cottrill* v. *Krum,* 100 Mo. 397; *Speed* v. *Hollingsworth,* 54 Kan. 436; *Riley* v. *Bell,* 120 Iowa 618; *Watson* v. *Molden,* 10 Idaho 570; *Arnold* v. *Teel,* 182 Mass. 1; *Schumaker* v. *Mather,*

133 N. Y. 590; *Roberts* v. *Holliday*, 10 S. D. 576; *Wright* v. *Mortgage Company*, (Civ. App. 1897 Tex.) 42 S. W. 789; *Tacoma* v. *Light Company*, 17 Wash. 458. The representation that the stock was a "good buy" in the third instruction was coupled with the statement of a fact by a person presumably familiar with the coal property. Such representation would be regarded with reason as an honest appraisal, and according to all business experience it would usually be received as a circumstance of great weight. A like statement may be made concerning the expression that the investment "would pay a dividend of 25% on the stock of said corporation" contained in instruction No. 4. The statements made, which the defendant complains as being matters of opinion, are linked together, each with a plain statement of a misrepresentation of fact, and the jury's finding is dependent upon their belief in the truth of both. The first statement was merely introductory to the statement of fact declared on in the first instance, while the second statement was a conclusion of a representation of fact. Neither instruction authorizes recovery alone upon the statement maintained by the defendant to be merely opinion. Hence it is unnecessary to determine their legal status here.

The defendant urges the same objections to instruction No. 4. It contains all the elements of the instruction just discussed. But it is merely based on the other representation in the declaration that the defendant "in substance represented and stated to the plaintiff that a contract had been made for a sale of the output of the coal from the mining operations on the property of the said corporation for the year 1921 at $6.50 a ton, and that this would pay a dividend of twenty-five per cent. on the stock of said corporation," charging their falsity and that the plaintiff acted upon them to his hurt. The reasons we have given for holding instruction No. 3 good, apply also to this instruction.

Instruction No. 8 is assailed. It told the jury in effect that if they believe from the evidence that the defendant made the representations claimed by the plaintiff in his declaration for the purpose of inducing the plaintiff to purchase the stock mentioned, or under such circumstances that the

defendant must have known such representation would likely be relied upon by the plaintiff, and if they believe such representations were untrue, that the plaintiff, without knowing that such representations were untrue, relied upon them, to his disadvantage, then the plaintiff was entitled to recover the damage suffered by him, notwithstanding the defendant, in making the representations, had no actual knowledge of the real conditions, at the time, but if they believe he made such representations, then he was under a duty to know that the things he represented as facts were in fact true at the time he made such representations, and that it was no excuse for him to say that he did not know that they were false. This instruction very clearly states the law as we have already shown. *Osborne* v. *Holt, supra.*

The issue of whether Horton acted upon the representations of Tyree or relied on the written contract made by Benton in which he agreed to take back Horton's stock at the end of ninety days at $1.10 per share is dealt with in instruction No. 9 for the plaintiff. The jury were advised that it would not preclude a recovery, even though they may believe that the plaintiff *also* relied upon such written contract. The converse of this proposition was given to the jury that, if the defendant made the representations, *yet if the plaintiff did not rely upon such representations,* and that the inducement for the purchase of said stock by the plaintiff *was the written agreement* of Benton to re-purchase, then they should find for the defendant. Thus the issue was clearly defined. It is not necessary that the fraudulent representations complained of should be the *sole* consideration or inducement moving the plaintiff. If the representation contributed to the formation of the conclusion in his mind, that is enough, although the agreement operated in bringing him to the same determination. 12 R. C. L. 358; *Iron Company* v. *Trout,* 83 Va. 397. It has been held that, even where one would not have entered into a contract without a guaranty covering the matters as to which representations had been previously made, this constituted no waiver of his right to rely upon such representations. *Busch* v. *Wilcox,* 82 Mich. 336. The court there, in speaking of a guaranty that had

been made, said: "The testimony is very strong in that direction. But Busch (plaintiff) also testifies that he relied upon the representations made by Mr. Hall (defendant's agent), and we cannot say that he did not rely upon both. It does not seem to us that because he would not have entered into the contract without Hall's guaranty, such fact was a waiver of his right to rely upon the prior representations made by Hall, whatever may have been the value of such verbal guaranty in a legal point of view." This is on all fours with the case here. The jury were properly instructed on this point.

The action of the court in refusing to give defendant's instructions Nos. 1, 2, 3, 4 and 5 is complained of. The first of these instructions stressed the point that the defendant must have knowledge of the falsity of his statements and in the remainder that the statements complained of were matters of opinion and not actionable. These questions already have been determined in our consideration of plaintiff's instructions. It was not error to refuse them. Defendant's instruction No. 6 was to the effect that if the jury believed that any of the witnesses testified falsely as to any material fact, they have a right to disregard all the testimony of such witness so testifying falsely, or to give his testimony, or any part thereof, such weight only as in their opinion the same may be entitled to. While this instruction has been often given it is open to criticism, according to *State* v. *Lee,* 103 W. Va. 631; 138 S. E. 324, because it fails to limit the words "testified falsely" with some qualifying word such as "wilfully", "knowingly", or "corruptly". Still its giving has never been held to be reversible error. However, instruction No. 9, offered by defendant, states the same proposition of law, using the qualifying word "wilfully". So, a proper instruction was refused. However, we find the court gave on its own motion an instruction to the effect that in weighing the evidence the jury had a right to take into consideration the interest of any witness in the result of the suit; the bias or prejudice of any witness, if any be shown upon the witness stand; the demeanor of the witness upon the stand; the reasonableness or the unreasonableness of the statements of the

witnesses; and give to the evidence of each and every witness such weight as a jury may believe it justly entitled to. While this does not reach the precise point aimed at by the defendant in the instructions he offered, in a general way it achieved the purpose. It focused the attention of the jurors on the weakness or strength of the testimony of the individual witness. Considering the issues and the evidence, we are not convinced that the failure of the court to give this instruction affected the verdict to the prejudice of the defendant.

The defendant cites as error the court's refusal to admit evidence going to show his general good character. It will be observed that such evidence was not limited to his reputation for truth and veracity, but the inquiry required the witness to respond to what his reputation was as ''to truth and veracity, honesty and integrity''—general in character. The rule in England, and in the courts of this country, generally is that such evidence is admissible only in criminal cases where the question of criminal intent is one to be found by the jury. *Hess* v. *Marinari*, 81 W. Va. 500, is cited by defendant in error as supporting his claim that such evidence was admissible here. This case holds that it is only admissible in civil cases where it is necessary to plaintiff's recovery that he prove against the defendant facts which constitute a crime, and that in order to such recovery the defendant must have had criminal intent when he did the acts complained of. Such is not the case we have under consideration. So, it will be observed that it was admitted in the *Hess* case for the purpose of overcoming the proof offered to show criminal intent—the very reason for which the books hold it to be admissible in criminal cases. It is generally held inadmissible, by way of defense, in civil actions for damages for making false representations. 12 R. C. L. 429. This rule is held to extend to civil actions in which a party is charged with specific fraud. *Fowler* v. *Aetna Ins. Co.*, 6 Cow. 673; *Norris* v. *Stewart's Heirs*, 105 N. C. 455; *Simpson* v. *Westenberger*, 28 Kan. 756; *Stone* v. *Hawkeys Ins.*, 68 Iowa 737. Defendant's counsel say that the character of the defendant is put in issue here, because the plaintiff accused him of fraud. Tilghman, C. J., in *Anderson* v. *Long*, 10 Serg. & R. 61, said:

"But that is not putting character in issue. By the same mode of reasoning, the defendant's character is put in issue, in every action of assumpsit, because the declaration charges him with an intent to deceive and defraud the plaintiff. * * * But it has never been supposed that character is put in issue merely by the charge of fraud, made by one party against the other." If such evidence is proper, then a person may screen himself from punishment due to fraudulent conduct till his character becomes bad. Such a rule of evidence would be fraught with danger. Every man must be answerable for every improper act; and the character of every transaction must be ascertained by its own circumstances, and not the character of the parties.

Other questions raised relate to the introduction of evidence. In its essence Horton's action is a common law action for deceit. His complaint, in substance, is that he has been led into the purchase of 100 shares in the Mountain State Coal Corporation, which has proven a most ruinous investment, and that he was induced to buy through reliance upon the certain false representations made by the defendant, whereby he lost his money. Benton was the guiding spirit of the corporation. He was introduced to Horton by the defendant Tyree on the day the representations were made (on which Horton was led to subscribe for the stock) as "my friend, Mr. Benton, who owns 2690 acres of coal land, which I (Tyree) sold to him cheap, which by engineer's report it had been found that the land was worth six for one." (Meaning, that it was worth six times what Benton paid for it). Benton had executed an agreement with Horton that, if he was not satisfied with his purchase, he would return Horton's note at the end of ninety days, and take the stock back at $1.10 a share. Horton testified that a short time thereafter he went back to Tyree and asked him about Benton. Thereupon there was introduced in evidence the following testimony: "Q. What did he tell you? A. I asked Mr. Tyree where Mr. Benton got all of this money, and he said that Mr. Benton was a coal operator, that he was an expert accountant, that he audited the books for large coal companies and got large fees, as high as $5,000 or $10,000 as a fee

for straightening out these books, and that he was also a trader, and I said, 'What is Mr. Benton worth?' and he said 'A quarter to half a million dollars'. Q. How did you feel about this transaction after getting this additional information from Mr. Tyree? A. I felt perfectly satisfied. Q. Did you believe that statement to be true? A. I did. Q. Did you rely upon it? A. I did.'' The relevancy of the foregoing testimony is questioned. Tyree denies in toto having made the statements charged in the declaration to be false representations. Horton claims that the memorandum Benton gave to him to repurchase the stock provided he was not satisfied with it, was given in the presence of Tyree, who had told Horton on the day it was given that from his investigation he considered Benton's contract good. As a general rule evidence of the subsequent acts and dealings of a party charged with fraud is admissible if it tends to establish the fraud charged, or as a circumstance to show fraudulent intent. 27 C. J. 50; 12 R. C. L. 430; *Salmon* v. *Richardson,* 30 Conn. 360; *Lowance* v. *Johnson,* 75 W. Va. 784; *Osborne* v. *Holt, supra; Staker* v. *Reese, supra.* Great latitude is permitted in the introduction of evidence in such cases. The last cited case was such a case as we have here, but based upon fraudulent misrepresentations made by a director of a corporation inducing another stockholder to sell his stock at less than its worth. There the seller went back to the defendant, upon whose statements he had relied in making the sale of his stock, and asked him further about the negotiations leading up to the sale. On this occasion, subsequent to the alleged fraudulent transaction, Reese ''reiterated the statement that he had told him the entire truth in that regard'', i. e., the first representations he had made in regard to the stock. So, we believe it was not error to admit this testimony.

The other exception by the defendant to testimony admitted by the court relates to the introduction of the record in the receivership case, whereby the property of the Mountain State Coal Corporation was sold; the basis for this exception being that such documentary evidence was irrelevant. According to Horton, the complained of transaction took place

on November 15th, 1920. Before the ninety day note he gave as a consideration for the stock purchased became due Benton had disappeared. A creditors' suit thereupon was instituted against said corporation, and on December 24, 1920, the property of this company was put in the hands of a receiver. The cause was referred to a commissioner whose report showed a large indebtedness of the company, and a decree was entered directing the sale of the property to satisfy such indebtedness. This is the record introduced in testimony. The declaration contains a statement of all the facts touching the alleged fraudulent transaction. The record of the receivership case adverted to is set out therein. Properly construed, the declaration authorized proof of the transaction from the inception to the final consummation of it. *Averill* v. *Boyer*, 76 W. Va. 642. The chief objection to the record is to that part of it showing the amount for which the property was sold—$25,000.00. However, this was met before the jury by evidence introduced by the defendant to the effect that it was purchased by those who had an equity in the property to the extent of over $200,000.00; that since the time of the sale of the stock to Horton, a soaring coal market had broken and coal bringing from $6.00 to $20.00 a ton then became a drug on the market at any price. Of course, the jury were limited by the instruction of the court in fixing the value of the stock to the difference between what said stock was *actually worth* at the time Horton acquired it, and the amount which he *actually paid* therefor. 12 R. C. L. 456. In view of the wide scope of the evidence admitted by the court, we cannot see that the jury were misled into believing the property of the said corporation sold for its real value at the receiver's sale. What it brought there was only a circumstance to be considered along with all the other evidence of the case as to the real value at the time of making the alleged misrepresentation. In *Osborne* v. *Holt, supra,* evidence of the foreclosure of a deed of trust, and sale thereunder, was offered, admitted and considered by the jury. The evidence there went, as here, to show the full extent of the loss of the plaintiff from his investment.

While the testimony taken in this case is quite voluminous and very conflicting in regard to such issues as the defendant's knowledge of the facts, his representations, etc., yet a careful consideration of the same discloses sufficient evidence to support every material allegation of plaintiff's declaration (see *Horton* v. *Tyree, supra,* regarding sufficiency of declaration). It was purely a matter for jury determination. So, in view of the fact that the jury, under proper instructions, have found for the plaintiff, and the further fact that the trial court committed no substantial error in the rejection or admission of evidence, we reverse the judgment of the circuit court, reinstate the verdict of the jury, and enter judgment here for the plaintiff.

*Reversed; judgment here.*