DAVID F. LENGYEL AND CHERYL K. LENGYEL

*v.*

WALT LINT, *d/b/a* WALT LINT REALTY,

WALT LINT REALTY, INC., *a* WEST VIRGINIA

*corporation*, RUTH ANN SCHREINER, CARL W. COSTANZO

*and* BONNIE E. COSTANZO

(No. 14620)

Decided June 30, 1981.

*Frankovitch & Anetakis* and *Robert M. Vukas* for appellants.

*McDermott & Bonenberger* and *Landers P. Bonenberger,* for appellees Walt Lint, etc., et al.

*Paula K. Silver* for appellees Carl W. Costanzo, et al.

McHUGH, JUSTICE:

This action is an appeal by David F. and Cheryl K. Lengyel from an order of the Circuit Court of Brooke County, entered on July 24, 1978, granting motions for summary judgment made by the defendants, Walt Lint, d/b/a Walt Lint Realty, Inc., and Ruth Ann Schreiner, and Carl W. and Bonnie E. Costanzo. This appeal presents questions relating to an action for fraud arising from a real estate transaction and the appropriateness of summary judgment in such a case.

In March of 1977, Carl W. and Bonnie E. Costanzo orally contracted with Walt Lint Realty, Inc., to sell their home located on Patterson Drive in Follansbee, West Virginia. The Costanzos dealt with Ruth Ann Schreiner, an employee of the realty company.

The Costanzos, in March of 1977, authorized Ms. Schreiner and Walt Lint Realty, Inc., to advertise their property in local newspapers. An advertisement was placed in the Weirton Daily Times. It said:

> HAVE A THIRST FOR LUXURY? Truly a spacious home of superb design and quality. You will love it because it's so versatile, so comfortable and roomy with 3 bedrooms plus den with fireplace. Living room with beautiful burnt orange carpet and glass sliding doors to a covered porch that overlooks your own swimming pool. Kitchen with wood cabinets, built in range, oven, dishwasher, and refrigerator, double sinks and breakfast booth. Huge dining room. Two full baths one with corner tub. Beautiful entrance foyer with skylights. Two car attached garage, circuler [sic] driveway entrance leading to this 95'x35' Cedar siding ranch of 4 yrs. on one acre. $59,900 No. 303.

This advertisement came to the attention of the appellants, David F. and Cheryl K. Lengyel, on May 26, 1977. They made an appointment with Ms. Schreiner to view the property the following day. On May 27, 1977, Mrs. Lengyel viewed the property on two occasions. On the first occasion Ms. Schreiner showed the home to Mrs. Lengyel; on the second occasion Mrs. Lengyel returned with her husband, David, and the Costanzos showed them the home. That evening the Lengyels signed a Purchase-Sale Agreement.

The Lengyels moved into the home on July 8, 1977. The closing of the sale of the property was held on July 11, 1977. Eight days later, on July 19, 1977, the Lengyels notified all the defendants that they wanted to rescind the contract. The defendants refused to agree to a rescission of the contract. This civil action was then commenced on August 5, 1977, when the plaintiffs, David F. and Cheryl K. Lengyel, filed a complaint in the Circuit Court of Brooke County naming Walt Lint, d/b/a Walt Lint Realty, Inc., and Ruth Ann Schreiner, and Carl W. and Bonnie E. Costanzo as defendants. The complaint, subsequently amended on November 10, 1977, alleged that the sale of the property had been procured by fraud and asked that the Circuit

Court of Brooke County award damages in the amount of one hundred thousand dollars, or, in the alternative, order a rescission of the contract.

Specifically, the complaint alleged that the advertisement in the Weirton Daily Times had been placed "falsely and fraudulently and with the intent to deceive and defraud" by Walt Lint Realty, Inc., Ruth Ann Schreiner and Carl W. and Bonnie E. Costanzo. The complaint further alleged that the Lengyels had "believed and relied" on the representations made in the advertisement and were induced thereby to enter into the Purchase-Sale Agreement. The complaint alleged that the advertisement contained five misrepresentations: (1) that the house was a "trailer with additions" and was not of "superb design and quality"; (2) that the house was a "trailer with additions" and not a "95'x35' Cedar siding ranch"; (3) that the house was six, not four, years old; (4) that the lot upon which the house was located consisted of only .62 acres of land and not "one acre" as stated in the advertisement; and (5) that the house was not a "conventional home" as implied by the advertisement.

The complaint also alleged that, subsequent to the signing of the Purchase-Sale Agreement but prior to the closing of the sale, further oral misrepresentations were made by the defendants to the plaintiffs when the Lengyels raised questions regarding the construction of the home. Four specific misrepresentations were alleged in this regard: (1) that the residence was constructed in a good, substantial and conventional manner; (2) that the residence was in fact located on one acre of grounds; (3) that the residence was not a trailer but a conventional home, and (4) that the residence did match the description in the advertisement. The complaint alleged that the defendants made the above misrepresentations either knowingly or in reckless disregard of the truth and that the plaintiffs, relying on these further misrepresentations, went through with the transaction. The defendants, by answer, denied all the material allegations of the complaint.

The defendants filed motions for summary judgment on January 24, 1978. The motions for summary judgment were

argued on June 1, 1978. An order was entered on July 24, 1978, granting the defendants' motions and dismissing the plaintiffs' claim with prejudice. From that order the plaintiffs filed a petition for an appeal with this Court on March 19, 1979. The appeal was granted on September 13, 1979. The case was argued and submitted on April 19, 1981.

On this appeal the appellants argue that there were genuine issues of material fact related to whether the defendants' representations were true or false, and the amount of knowledge held by the defendants about the truth or falsity of those representations, that should have precluded the trial court from disposing of the case on a motion for summary judgment. Appellees Walt Lint Realty, Inc., and Ruth Ann Schreiner argue that, as real estate agents[1] they did not owe any duty to the plaintiffs, or, in the alternative, that if they did owe a duty to the plaintiffs, that duty was not breached by their actions in this case and the circuit court's use of summary judgment was, therefore, proper. Appellees Carl and Bonnie Costanzo argue that the circuit court's disposition of the case on a motion for summary judgment was proper because it was clear that plaintiffs, from their own discovery depositions, had not relied on the representations made by the defendants and, therefore, as a matter of law, there was no actionable fraud.

A brief discussion of the law of fraud is necessary in order to decide whether the use of summary judgment in this case was proper. The essential elements in an action for fraud are:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying

---

[1] As in the past we here use the general term "real estate agent", see, e.g. Shannon v. Shannon, 270 S.E.2d 785 (W. Va. 1980); Sanders v. Roselawn Memorial Gardens, Inc., 152 W. Va. 91, 159 S.E.2d 784 (1968), rather than the statutory terms provided for in article 12 of chapter 47 of the W. Va. Code. We do not, in this opinion, distinguish between a "real estate broker," an "associate broker," or a "real estate salesman" as those terms are defined in W. Va. Code, 47-12-2.

upon it; and (3) that he was damaged because he relied upon it.

*Horton v. Tyree*, 104 W. Va. 238, 242, 139 S.E. 737 (1927). Fraud can be either in the inducement of a contract or in the execution of a contract. *Tolley v. Poteet*, 62 W. Va. 231, 57 S.E. 811 (1907). It has long been the law in West Virginia that a vendor of real property may be liable to the vendee in an action for fraud. *Averill v. Boyer*, 76 W. Va. 642, 87 S.E. 259 (1915); *Stout v. Martin*, 87 W. Va. 1, 104 S.E. 157 (1920). *See also Bostic v. Amoco Oil Co.*, 553 F.2d 329 (4th Cir. 1977).

It is not essential that the defendant know for a fact that the statement or act alleged to be fraudulent is false. An action for fraud may lie where the defendant either knows the statement to be false, makes the statement without knowledge as to its truth or falsity, or makes it under circumstances such that he should have known of its falsity. *State v. Berkeley*, 41 W. Va. 455, 23 S.E. 608 (1895).

> [I]t is very uniformly held that if it is represented that a certain state of facts is true, and this representation is made for the purpose of inducing another to act thereon, or under such circumstances as that the party making it must know that the other is likely to act thereon, he will be entitled to recover the damages suffered by him, notwithstanding the party making the representation had no actual knowledge of the real conditions at the time. He is under a duty to know that the things he represents as facts are in fact true at the time he makes the representation. It is no excuse for him to say that he did not know they were false.

*Osborne v. Holt*, 92 W. Va. 410, 415-416, 114 S.E. 801 (1922).

The complaining party must, generally, have relied upon the representations claimed to be false, but: "It is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff. If the representations contributed to the formation of the conclusion in the plaintiff's mind, that is enough. . . ." Syl. pt. 3, *Horton v. Tyree, supra*. This Court has also looked askance at what is commonly called "dealers talk" or "puffing" as an excuse for misrepresen-

tations: "[A] vendor guilty of a representation made with intent to deceive should not be heard to say that the purchaser ought not to have believed him." *Id.* at 243. *See also Morrison v. Bank of Mount Hope,* 124 W. Va. 478, 20 S.E.2d 790 (1942); *Stout v. Martin, supra.*

The law on the question of a real estate agent's liability to a third party for fraud is neither well settled nor well developed. Citing 1A M.J. Agency, § 79, p. 599 (1980), the parties in this case agree that, generally, an agent, acting within the limits of his agency, will not be liable for any wrong arising from a transaction unless it is attended by circumstances sufficient to apprise the agent that he is acting wrongfully in relation to others. This Court, however, has never directly addressed the issue of a real estate agent's liability to a third party or purchaser for fraud. Courts in other jurisdictions have considered this question but our review of those cases does not reveal a clearly developed general rule. An examination of those cases from courts addressing the issue does reveal that a real estate agent's liability to a purchaser for fraud often turns on the facts of the particular case as well as the law of the particular jurisdiction.[2]

We do not, at this time, attempt to define the legal issues involved in the developing area of law regarding a real estate agent's liability to a purchaser for fraud because the underlying factual issues were not fully developed in the circuit court. We do recognize, however, that there are situations in which a real estate agent may be liable to a

[2] *See, e.g., Carrel v. Lux,* 101 Ariz. 430, 420 P.2d 564 (1966); *Lock v. Schreppler,* 426 A.2d 856 (Del. Super. 1981); *King v. H. J. McNeel, Inc.,* 94 Idaho 444, 489 P.2d 1324 (1971); *Beard v. Gress,* 90 Ill. App.3d 622, 46 Ill. Dec. 8, 413 N.E.2d 448 (1980); *DeSoto v. Ellis,* 393 So.2d 847 (La. App. 1981); *Davis v. Davis,* 353 So.2d 1060 (La. App. 1977); *Raach v. Haverly,* 269 N.W.2d 877 (Minn. 1978); *Suzuki v. Gateway Realty of America,* 299 N.W.2d 762 (Neb. 1980); *Pumphrey v. Quillen,* 165 Ohio St. 343, 59 Ohio Ops. 460, 135 N.E.2d 328 (1956); *Holland v. Lentz,* 239 Or. 332, 397 P.2d 787 (1964); *Shane v. Hoffmann,* 227 Pa. Super. 176, 324 A.2d 532 (1974); *Byrn v. Walker,* 267 S.E.2d 601 (S.C. 1980); *Cameron v. Terrell & Garrett, Inc.,* 599 S.W.2d 680 (Tex. Civ. App. 1980); *Lien v. Pitts,* 46 Wis.2d 35, 174 N.W.2d 462 (1970); *First Church of Open Bible v. Cline J. Dunton Realty, Inc.,* 19 Wash. App. 275, 574 P.2d 1211 (1978).

purchaser in an action for fraud. A real estate agent is not, as a matter of law, always insulated from such liability.

It is against this background that we must analyze the use of summary judgment in this case. Summary judgment may be used only where the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *W. Va. R.C.P.*, Rule 56 (c). As has so often been stated by this Court, this is the standard for determining whether a motion for summary judgment should be granted. *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

"The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." *Aetna Casualty & Surety Co. v. Federal Insurance Co., supra,* at 777. The party moving for summary judgment has the burden of showing that there is no genuine issue of fact. *Aetna Casualty & Surety Co. v. Federal Insurance Co., supra.* Summary judgment is, generally, viewed with caution in this jurisdiction. We recently held: "Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment." Syl. pt. 1, *Masinter v. Webco Co.*, 262 S.E.2d 433 (W. Va. 1980).

In this case the defendants, Carl W. and Bonnie E. Costanzo, specified in their motion for summary judgment that the ground upon which the motion was made was that the depositions of the plaintiffs ·proved that they did not rely upon any representations made by the defendants. The defendants, Walt Lint Realty, Inc. and Ruth Ann Schreiner, specified in their motion for summary judgment that the grounds upon which the motion was made were that, on the basis of all the depositions in the case, there was no "misrepresentation of the facts" and there "was no willful concealment of the true nature of said residence." These motions were based on the record before the court at the time they were made, i.e., the pleadings and the depositions of the Lengyels and Costanzos. The motions

point to an apparent failure of proof on the part of the plaintiffs at this stage of the litigation. The motions miss the point, however, in that the primary purpose of depositions is discovery, not proof. As we recently noted in *Masinter v. Webco Co., supra,* at 436:

> In complex cases, the tendency on a summary judgment motion is to rely on the facts developed through discovery as constituting all of the relevant facts in the case. This may lead to inaccurate factual assessment. A party may often undertake very little discovery or limit the discovery to certain critical areas with the knowledge that he has the requisite proof available without the necessity of any further discovery. Frequently, discovery depositions of the parties or their key witnesses do not reflect all relevant facts. This is because these depositions are taken by adverse counsel and the deponents do not care to volunteer information and, therefore, they give limited answers to the questions. While discovery procedures are useful to develop the facts of a case, there is no requirement that all facts must be developed through discovery, and certainly no grounds for the assumption that they have been developed by discovery.

The question on a motion for summary judgment is not, as posed in the motions in this case, whether the plaintiff has met the burden of proof on material aspects of his claim. It is, rather, whether a material issue of fact exists on the basis of the factual record developed to that date. The burden on a motion for summary judgment is not upon the non-moving party to show that he has developed facts which would allow him to prevail if his case was submitted to a jury. The burden is on the moving party to show that there is no genuine issue as to any material fact in the case. The defendants in this case failed to meet that burden.

On the record in this case there were questions of fact presented that should have precluded the use of summary judgment. For example, the issue of whether misrepresentations were made must turn on whether the representations made to the plaintiffs were true or false. Whether the

representations in this case were true or false is not so easily determined from the record at this stage in the proceeding. The Lengyels offered testimony that the home which they purchased was a mobile home with additions. The Costanzos testified that it was a modular home. This alone created a genuine issue of fact. Which was it, a mobile home or a modular home, or are they the same thing? The question cannot be resolved on this record unless you accept the testimony of one party and ignore the testimony of another party. This is not the type of determination to be made on a motion for summary judgment. Similarly, the deposition of David Lengyel raised a factual question regarding his reliance. He testified as follows: "Q. In other words, you were relying on the ad? A. More or less. . . . Q. When you signed the agreement? A. Yes."

We would additionally note that the use of summary judgment is disfavored where development of the facts of a case is desirable so as to clarify the application of the law. *See Consolidated Gas Supply Corp. v. Riley*, 247 S.E.2d 712 (W. Va. 1978). The facts should have been developed here to allow clarification of the law in regard to a real estate agent's possible liability to a purchaser in an action for fraud.

The trial judge's action in granting the defendant's motions for summary judgment was error. There were factual issues raised on the record and those issues should have been developed so as to clarify the application of the law in this case. The order of the Circuit Court of Brooke County, entered on July 24, 1978, is, therefore, reversed and the case is remanded to that court for proceedings in accordance with this opinion.

*Reversed and Remanded.*