**FILED**

**May 27, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Jay M. Potter,
Plaintiff below, Petitioner,

vs.) No. 21-0009 (Kanawha County 19-C-686)

Bailey & Slotnick, PLLC, and
Charles R. Bailey,
Defendants below, Respondents.

**MEMORANDUM DECISION**

Petitioner, Jay M. Potter, self-represented litigant, appeals the Circuit Court of Kanawha County's December 10, 2020 order dismissing his complaint against Respondents, Bailey & Slotnick, PLLC, ("B&S") and Charles R. Bailey, pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[1] Respondents, by counsel Michael J. Farrell and J. Ben Shepard, filed a response to which petitioner filed a reply.

After considering the parties' written and oral arguments, as well as the appendix record and the applicable law, this Court finds no substantial question of law. Accordingly, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure [eff. 2010] and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings consistent with this decision.

Mr. Potter is an attorney. When he joined B&S in August 2012, he was 65 years old and he brought with him several cases. He claims that Mr. Bailey, a managing member of B&S, lured him to the firm by promises that he would have opportunities to obtain new cases and that he would not be relegated to assisting other attorneys. Nevertheless, according to Mr. Potter, he found himself operating as Mr. Bailey's assistant. These circumstances allegedly prompted him to leave B&S in July 2014, taking his cases with him to another firm.

Mr. Potter was unhappy with his new firm and, in September 2014, he began exploring a return to B&S. Mr. Potter claims that Mr. Bailey said his prior experience at

---

[1] Rule 12(b)(6) authorizes a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" W. Va. R. Civ. P. 12(b)(6) [eff. 1998].

1

B&S had been a "mistake[.]"  According to Mr. Potter, Mr. Bailey expressed to him a seemingly "genuine commitment" that, if Mr. Potter returned with his cases, Mr. Potter (a) would have the opportunities he had expected during his previous experience at B&S, (b) would have new cases assigned to him, (c) would not be relegated to assisting Mr. Bailey, (d) would not have to work on cases that did not appeal to him, and (e) would be paid a salary regardless of his productivity.

Mr. Potter claims, however, that Mr. Bailey failed to disclose his actual intentions, which were to use Mr. Potter primarily as his assistant; to elevate other, younger attorneys and eventually shift Mr. Potter to a non-salaried position; and to allocate to himself the most lucrative case that Mr. Potter brought with him so that Mr. Bailey would receive a revenue share from Mr. Potter's work.

Mr. Potter asserts that he relied on Mr. Bailey's promises and returned to B&S in September 2014 at the age of 68.  He says that he worked on his own cases for less than a month before he was asked to resume assisting Mr. Bailey.  Mr. Potter claims that no new cases were assigned to him and that, in early 2015, B&S segregated its offices by age.  He also claims that B&S excluded him from an in-house seminar in 2015 designed to develop additional business.  Mr. Potter alleges that when he expressed concern about his role at B&S, Mr. Bailey professed concern that Mr. Potter might retire while Mr. Bailey still needed his help.

In September 2015, Mr. Potter allegedly requested a meeting with B&S equity members Jason Hammond and John Fuller.  During the meeting, Mr. Potter objected that he had returned to B&S based on assurances that he would have opportunities to acquire new cases and that his primary role would not be assisting Mr. Bailey or other attorneys. He also sought to be "integrated" into the firm's work so that he would not become unproductive.  According to Mr. Potter, Mr. Hammond and Mr. Fuller encouraged him to "be more receptive to the role of assisting Mr. Bailey."

Mr. Potter alleges that he grew "increasingly vocal" about B&S's failure to assign new cases to him or afford him opportunities to acquire them.  In December 2015, Mr. Bailey offered to send Mr. Potter to CLE seminars to help him acquire new business.  Mr. Potter declined the offer, reasoning that the plan was not likely to work, that he had received better assurances before he returned to the firm, and that he already had the opportunity to attend CLE seminars.

Mr. Potter alleges that Mr. Bailey became increasingly concerned that Mr. Potter might retire and began making "ageist" comments, such as referring to Mr. Potter's "gray-haired" legal advice, saying that a certain judge is "older than Jay [Potter,]" and mocking Mr. Potter for being an "artifact."

2

In March 2016, Mr. Potter learned that his most lucrative case had been assigned to Mr. Bailey. Mr. Potter alleges that this assignment increased his frustration with B&S using him as a "support system for Mr. Bailey." He claims that when he expressed this frustration to Mr. Bailey, Mr. Bailey agreed to begin assigning cases to Mr. Potter, only to withdraw this promise a day later.

According to Mr. Potter, Mr. Bailey sought his help in January 2017 with preparation for trial in a "high-profile" case. At this time, Mr. Bailey allegedly informed Mr. Potter that other shareholders were concerned about Mr. Potter's productivity. Mr. Bailey, however, allegedly professed that he did not share this concern, but he claimed that the other shareholders' concern would be allayed if Mr. Potter resumed helping Mr. Bailey. Mr. Potter said he shared the shareholders' concern and attributed his lack of productivity to B&S's failure to assign new cases to him.

Mr. Potter claims that in May 2017, he advised B&S that he might have cancer and that in June 2017 he advised Mr. Bailey that the "primary" cases he had brought with him to B&S would soon resolve. Mr. Potter also claims that in June 2017, B&S "closed its file" on the "high-profile" case on which he had been providing substantial assistance to Mr. Bailey.

In July 2017, Mr. Potter asserts that Mr. Bailey e-mailed him to complain about his alleged lack of productivity. Mr. Potter claims that Mr. Bailey offered him a contractual, non-salaried position, like that of another older attorney at the firm, whereby Mr. Potter would earn a share of revenue from his own cases or cases where he assisted other attorneys. In reply, Mr. Potter allegedly said that the only thing he had in common with the other attorney was age, and he reminded Mr. Bailey of his promise that Mr. Potter's compensation would not be tied to his productivity. Mr. Potter asked what would happen if he declined the offer. According to Mr. Potter, Mr. Bailey responded that, if Mr. Potter declined the offer, he would be terminated. Mr. Potter avers that he found out soon afterward that he had cancer and that he accepted Mr. Bailey's offer in order to retain his health insurance.

However, Mr. Potter subsequently obtained his own insurance and a one hundred percent service-connected disability rating from the United States Department of Veterans Affairs. He alleges that he met with Mr. Bailey, Mr. Hammond, and Mr. Fuller in late January 2018, and that he advised them that he was capable of working, notwithstanding his cancer, and that he asked them what work he could expect to have in the future. He claims that he received no response. However, in February 2018, he accepted a request to begin assisting Mr. Hammond. Mr. Potter alleges that, in the months that followed, his former work was assigned to younger attorneys and that the firm hired another younger attorney. He also claims that, over a four-year period, B&S promoted twelve substantially younger attorneys within the firm.

According to Mr. Potter, he received no pay for his work assisting Mr. Hammond and, in October 2018, he refused to do more work for Mr. Hammond. In December 2018, Mr. Potter resigned.

Mr. Potter sued both B&S and Mr. Bailey in July 2019, in a detailed, 46-page complaint. The complaint alleges that Mr. Potter is a member of a protected class by virtue of his age, and the complaint's five counts charge the defendants with fraud, breach of contract, age discrimination (failure to provide equal opportunity), age discrimination (unlawful threats); and age discrimination (constructive discharge).

B&S and Mr. Bailey subsequently moved to dismiss the complaint. After a hearing, the circuit court granted the motion, dismissing all counts of the complaint with prejudice. Mr. Potter appeals from the circuit court's December 10, 2020 order granting the motion to dismiss.

In this appeal, Mr. Potter challenges the circuit court order that granted a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Our "'[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)." Syl. Pt. 1, *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020). We apply the same standard of review when we are called upon to interpret a rule of procedure. Syl. Pt. 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997) ("An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review."). With this standard of review in mind, we will consider Mr. Potter's appeal.

Mr. Potter argues that the circuit court erred by dismissing his complaint, and he attributes this error to the circuit court's failure to follow our "standards" for granting motions to dismiss under Rule 12(b)(6). In particular, he faults the circuit court for failing to view the facts alleged in the complaint in the light most favorable to him and for failing to accord to him the benefit of all inferences that could have been drawn from those alleged facts. B&S and Mr. Bailey argue that the circuit court properly dismissed the complaint. After careful review of the complaint,[2] we agree with Mr. Potter that dismissal pursuant to Rule 12(b)(6) was error.

Because Mr. Potter has invoked our standards for granting a motion to dismiss, we begin by reviewing Rule 12(b)(6) and the principles that govern its application. Rule 12(b)(6) authorizes a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted" in lieu of filing a responsive pleading to a claim, counterclaim, cross-claim, or third-party claim. *Id.* This procedural device provides a means of "test[ing]

---

[2] "Our review of the case is limited to the sufficiency of the complaint[.]" *Scott Runyan Pontiac-Buick*, 194 W. Va. at 776 n.7, 461 S.E.2d at 522 n.7.

4

the sufficiency of the complaint[,]" *Cantley v. Lincoln Cnty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam), and exists to "weed out unfounded suits[,]" *Scott Runyan Pontiac-Buick*, 194 W. Va. at 776, 461 S.E.2d at 522.

However, "[a] court should not dismiss a case simply because it believes it is unlikely that the plaintiff will prevail." *McGinnis v. Cayton*, 173 W. Va. 102, 104, 312 S.E.2d 765, 768 (1984). The question is not whether a plaintiff has "a strong case, but rather whether [he or she] ha[s] *any* case." *Id.* at 105, 312 S.E.2d at 768 (emphasis added). West Virginia law reflects a "preference . . . to decide cases on their merits[.]" *Yurish v. Sinclair Broad. Grp., Inc.*, 246 W. Va. 91, ___, 866 S.E.2d 156, 161 (2021) (quoting *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008) (per curiam)). Therefore, we require "[a] trial court considering a motion to dismiss under Rule 12(b)(6) [to] *liberally construe* the complaint so as to *do substantial justice*." *Cantley*, 221 W. Va. at 470, 655 S.E.2d at 492 (emphasis added). Indeed, we have stated that "motions to dismiss are viewed with disfavor," and we have "counsel[ed] lower courts to rarely grant such motions." *Forshey v. Jackson*, 222 W. Va. 743, 749, 671 S.E.2d 748, 754 (2008).

When a party files a motion to dismiss under Rule 12(b)(6), "the pleading party has no burden of proof. Rather, the burden is upon the moving party to prove that no legally cognizable claim for relief exists." *Mountaineer*, 244 W. Va. at 520, 854 S.E.2d at 882. The "court reviewing the sufficiency of a complaint . . . should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff." *Id.* A plaintiff "is not required to establish a *prima facie* case at the pleading stage." *Id.* at 522, 854 S.E.2d at 884. On the contrary, "to survive a motion under Rule 12(b)(6), a pleading need only outline the alleged occurrence which (if later proven to be a recognized legal or equitable claim), would justify some form of relief." *Mountaineer*, 244 W. Va. at 521, 854 S.E.2d at 883. Dismissal of a complaint under Rule 12(b)(6) is inappropriate "unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (emphasis added).[3]

---

[3] Although this standard of pleading provides latitude, we would remind parties and their counsel that it is still a *standard*. As we stated in *Mountaineer*, "our simplified pleading standard is not an excuse for 'carelessly drafted or baseless pleading[s].' *Sticklen*[ *v. Kittle*], 168 W. Va. [147,] 164, 287 S.E.2d [148,] 157-58 [(1981)]." *Mountaineer*, 244 W. Va. at 522, 854 S.E.2d at 884 (alteration in original). We remain committed to the view that

(continued . . .)

5

In this case, the circuit court dismissed all counts of Mr. Potter's complaint, with prejudice, pursuant to Rule 12(b)(6). After careful review, we believe that dismissal was unwarranted.

The circuit court dismissed Mr. Potter's allegation of fraud (Count I) because it found that Mr. Potter's claim "accrued no later than January 2017[.]" Mr. Potter filed his complaint in this matter on July 11, 2019, and no party disputes that the two-year statute of limitations set forth in West Virginia Code § 55-2-12 (eff. 1959) applies to a cause of action for fraud. [4] The question before us is whether the circuit court correctly determined, at the Rule 12(b) dismissal stage, that the statute of limitations for Mr. Potter's fraud claim began to run no later than January 2017.

We established the analytical framework for assessing whether an action is barred by the applicable statute of limitations in *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009). According to *Dunn*,

> [a] five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of

---

> "a plaintiff may not 'fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint[,]' *see Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993), or where the claim is not authorized by the laws of West Virginia." *Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 776, 461 S.E.2d at 522.

*Newton v. Morgantown Mach. & Hydraulics of W. Va., Inc.*, 242 W. Va. 650, 653, 838 S.E.2d 734, 737 (2019).

[4] West Virginia Code § 55-2-12 provides that

> [e]very personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.[5]

225 W. Va. at 46, 689 S.E.2d at 258, syl. pt. 5. The circuit court focused its analysis on the third step, which asks "when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action . . . ." *Id.* According to the circuit court, Mr. Potter knew or reasonably should have known that Mr. Bailey's alleged promises were false in October 2014, when he was asked to resume assisting Mr. Bailey; in March 2015, when he was passed over for participation in the business development seminar; in September 2015, when he had been assigned no new cases for a year; or at the latest in January 2017, when Mr. Bailey mentioned other shareholders' concern about his productivity.

---

[5] Syllabus Point 4 of *Gaither*, 199 W. Va. 706, 487 S.E.2d 901, provides that

> [i]n tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

The facts and circumstances alleged by Mr. Potter raise questions about when he knew, or reasonably should have known, that the promises that allegedly enticed him to join B&S were false.[6] No doubt B&S and Mr. Bailey will seek to explore those questions in discovery. However, *Dunn* expressly provides that "when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action" is a matter that "generally involve[s] questions of material fact that will need to be resolved *by the trier of fact*." *Id.* at 46, 689 S.E.2d at 258, syl. pt. 5, in part (emphasis added). We believe that a jury might conclude that Mr. Potter did not know, and in the exercise of reasonable diligence should not have known, that the alleged promises were false until July 13, 2017, when Mr. Bailey allegedly informed Mr. Potter that B&S would be offering him new terms of employment, or perhaps until July 14, 2017, when Mr. Bailey allegedly informed Mr. Potter that he would be terminated if he refused B&S's offer.

We have stated that "[t]he task of a court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mountaineer*, 244 W. Va. at 520, 854 S.E.2d at 882 (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)). It is true that, in many cases, the date on which a plaintiff has the requisite knowledge necessary to assert a claim is evident. In *Forshey*, the Court noted that to adjudicate an affirmative defense—which includes the statute of limitations—on a motion to dismiss, "[t]wo conditions must be met . . . ." *Id.* at 746 n.8, 671 S.E.2d at 751 n.8 (quoting Cleckley, Davis, & Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2], at 349). Those are, first, that "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint" and, second, that "the facts so gleaned must *conclusively establish* the affirmative defense." *Ibid.* (emphasis added). However, assuming that the allegations in the complaint are true and making all inferences in Mr. Potter's favor, he may yet demonstrate that he did not know, and in the exercise of reasonable diligence should not have known, that the alleged promises were false until July 13, 2017. For that reason, we find that the circuit court improperly weighed the evidence,

---

[6] We have held that

> [t]he essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and *false*; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Horton v. Tyree, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

Syl. Pt. 1, *Lengyel v. Lint*, 167 W. Va. 272, 280 S.E.2d 66 (1981) (emphasis added).

8

at the Rule 12(b)(6) dismissal stage of the proceeding, when it found that Mr. Potter's fraud claim is barred by the statute of limitations.

The circuit court dismissed Mr. Potter's breach of contract claim (Count II) because it found that Mr. Potter failed to allege an agreement with Mr. Bailey (as opposed to B&S), that Mr. Potter was merely an at-will employee whose employment could be terminated at any time, and that Mr. Potter waived any breach of contract by remaining at B&S after B&S offered him employment on different terms.[7] We find that in these matters, as well, the circuit court improperly dismissed Mr. Potter's breach of contract claim.

Although we agree that the complaint describes an employment relationship between Mr. Potter and B&S "of indefinite duration" and that such employment contracts "may be terminated at any time by either party to the contract[,]" Syl. Pt. 1, in part, *Suter v. Harsco Corp.*, 184 W. Va. 734, 735, 403 S.E.2d 751, 752 (1991) (quoting Syl. Pt. 2, in part, *Wright v. Standard Ultramarine & Color Co.,* 141 W.Va. 368, 90 S.E.2d 459 (1955)), we cannot agree that these factors demonstrate that "B&S did not breach any enforceable obligation owed to [Mr. Potter] as a matter of law." The complaint alleges promises to Mr. Potter that B&S breached before it unilaterally changed the terms of his employment and threatened him with termination, such as the promise that B&S would assign new cases to him and the promise that he would not be relegated to assisting Mr. Bailey. While Mr. Potter's breach of contract claim may or may not survive at the summary judgment stage, at this stage of the proceeding we must assume the truth of the factual allegations contained in the complaint in our review of the circuit court's dismissal of the claim. In doing so, we do not believe that dismissal of the breach of contract claim is proper pursuant to Rule 12(b)(6).

---

[7] With regard to the dismissal of Mr. Potter's breach of contract claim against Mr. Bailey, it is clear that such dismissal was unwarranted pursuant to Rule 12(b)(6). "Rule 12(b)(6) is not to be read or applied in a vacuum; it is intermeshed with numerous other rules." *Mountaineer*, 244 W. Va. at 520, 854 S.E.2d at 882. Under Rule 20 of the West Virginia Rules of Civil Procedure,

> [a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

W. Va. R. Civ. P. 20(a) [eff. 1998]). Accordingly, the complaint's reference to an alleged breach by the "Defendants" (which would include Mr. Bailey), warrants further discovery regarding the respective roles of Mr. Bailey and B&S, and renders dismissal of such breach of contract claim inappropriate.

9

The circuit court found that a party "will be deemed to have waived his rights" under a contract if he behaves in a manner that is "wholly inconsistent with reliance on the contract[.]" Syl. Pt. 1, in part, *Beall v. Morgantown & Kingwood R. Co.*, 118 W. Va. 289, 190 S.E. 333 (1937). It is true that Mr. Potter remained at B&S for several months after July 2017, when he accepted employment from B&S on new terms. We note, however, that "the existence of a waiver becomes a question of law" if "only one reasonable inference can be drawn from the evidence[.]" *Bruce McDonald Holding Co. v. Addington, Inc.*, 241 W. Va. 451, 460 n.21, 825 S.E.2d 779, 788 n.21 (2019) (quoting *Kossler v. Palm Springs Devs., Ltd.*, 101 Cal. App. 3d 88, 99, 161 Cal.Rptr. 423, 431 (1980)). Indeed, "[w]aiver is ordinarily a matter for jury determination[,]" *Beall*, 118 W. Va. at 295, 190 S.E. at 336, and we do not believe that the only reasonable inference to be drawn from the complaint is that Mr. Potter waived his right to assert a breach of contract.

According to the complaint, Mr. Potter raised frequent objections that he was being relegated to the role of Mr. Bailey's assistant and that new cases were not being assigned to him. Indeed, when Mr. Bailey contacted Mr. Potter in July 2017 to offer him new terms of employment, Mr. Potter allegedly responded with further objections that he had joined B&S to "expand his practice by obtaining additional cases" and that Mr. Bailey had breached his alleged promise that "there would be no relationship between his salary and his productivity." Mr. Potter ultimately accepted B&S's offer of employment on new terms, but he alleges that he did so only after being diagnosed with cancer and only "to avoid losing . . . medical insurance coverage while being treated for the cancer[.]" Again, upon a proper motion for summary judgment, Mr. Potter's claim may or may not survive. However, we believe that these allegations should be considered after appropriate discovery and in the context of a motion for summary judgment, or at trial. *See Mountaineer* at 522, 854 S.E.2d at 884 (quoting *Swierkiewicz*, 534 U.S. at 512) (noting that our "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). Accordingly, we find that the circuit court erred when it prematurely dismissed Mr. Potter's cause of action for breach of contract.

The circuit court dismissed Count III of the complaint, alleging age discrimination based on failure to provide equal opportunities, because it found that Mr. Potter failed to allege "an actionable adverse employment decision as a matter of law."[8] Reviewing the

---

[8] The circuit court also dismissed Count III against Mr. Bailey finding that Mr. Bailey is not an employer for purposes of West Virginia Code § 5-11-9(1) (eff. 2016) (providing that it is an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure . . ."). Under § 5-11-3(d)

(continued . . .)

10

standard set forth in West Virginia Code § 5-11-9(1), we disagree with the circuit court's finding that Mr. Potter failed to allege an actionable adverse employment decision. The statute forbids discrimination "against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[,]" *see id.*, and provides that "'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age . . . and includes to separate or segregate[,]" *Id.* § 5-11-3(h).

The complaint plainly alleges that Mr. Potter was relegated to a "geriatric career track" while other, younger attorneys were advanced at the firm and that Mr. Potter's role and future at the firm was determined by his age and not his capacity for work. In addition, the complaint contains detailed allegations that B&S segregated its workspaces by age. Even a cursory review of the complaint shows that Mr. Potter has asserted factual allegations that, if taken as true and construed "in the light most favorable to the plaintiff" are sufficient to survive a motion to dismiss. *Mountaineer*, 244 W. Va. at 520, 854 S.E.2d at 882.

The circuit court dismissed Mr. Potter's claim, set forth in Count IV of the complaint, alleging age discrimination based on the prohibition against threats because it found that "[i]t is not an unlawful 'threat' for an employer to offer an employee continued employment on different terms." West Virginia Code § 5-11-9(7) forbids "any person[ or] employer . . . to . . . [e]ngage in any form of threats . . . the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss . . . ." After reviewing the complaint, we believe that the circuit court order improperly dismisses these claims.

The complaint alleges that B&S and Mr. Bailey threatened Mr. Potter with economic loss by forcing Mr. Potter to choose between giving up the promises that had induced him to join B&S and having his employment terminated. This alleged "threat" forms the primary basis of Mr. Potter's claim pursuant to West Virginia Code § 5-11-9(7). However, the complaint goes on to provide further context, alleging that Mr. Bailey imposed this unappealing choice on Mr. Potter, not because Mr. Potter was genuinely

_____

(eff. 1998), an individual is an "employer" if he or she "employ[s] twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year . . . ." Thus, only Mr. Potter's "employer," as defined in § 5-11-3(d) may face liability to him under § 5-11-9(1). Mr. Potter's complaint clearly accuses the "Defendants" (which would include Mr. Bailey) of unlawful discriminatory employment practices under West Virginia Code § 5-11-9(1). Resolution of the questions of whether Mr. Bailey or B&S employed Mr. Potter, and whether either is an "employer," as that term is defined in § 5-11-3(d), requires factual development and discovery and renders dismissal pursuant to Rule 12(b)(6) inappropriate at this early stage of the proceedings.

unproductive, but because he had been "positioned" in a discriminatory fashion within the firm and because B&S hoped to "position" Mr. Potter "even more discriminatorily" and to avoid the consequences of such discrimination by obtaining Mr. Potter's consent to the new terms of employment. We make no prediction at this point as to whether this cause of action will survive after discovery and a potential motion for summary judgment. However, as the United States Supreme Court has observed, "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Swierkiewicz*, 534 U.S. at 512. Accordingly, we find that, pursuant to Rule 12(b)(6), this count of the complaint was improperly dismissed.

Finally, in Count V of the complaint, Mr. Potter alleges that Defendants' discriminatory practices created working conditions so intolerable that any reasonable employee would resign rather than endure such conditions.[9] The circuit court dismissed Count V of the complaint because the circuit court found that Mr. Potter failed to resign within a reasonable period of time. Failure to "resign within a reasonable time period after the alleged harassment" leads to a conclusion that the employee "was not constructively discharged." *Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000). Following this reasoning, the circuit court found that Mr. Potter "voluntarily accepted the 'intolerable' conditions of his continued employment" when he remained at B&S from July 2017 until December 2018.

However, the complaint alleges that B&S and Mr. Bailey "continued" their pattern of harassment after July 2017 by leveling unfair criticism against his prior work performance, offering him a single work assignment (on which he worked for nine months without pay), and assigning work that he was capable of performing to "substantially younger" attorneys. Mr. Potter alleges that B&S and Mr. Bailey "would not have taken the aforementioned prohibited actions but for Mr. Potter's age." However, taking Mr. Potter's allegations as true, as the circuit court was required to do at the Rule 12(b)(6) stage, Mr. Potter alleged a series of events that progressively rendered his working environment intolerable. Whether Mr. Potter failed to "resign within a reasonable time period after" that alleged progression of discrimination appears to be a question of fact that was inappropriately determined under a Rule 12(b)(6) motion. *Landrau-Romero*, 212 F.3d at 613. Relevant questions remain as to whether Mr. Potter remained employed for an unreasonable period of time following the alleged instances of age discrimination, and we

---

[9] We have held that "[a] constructive discharge cause of action arises when the employee claims that because of age, race, sexual, or other unlawful discrimination, the employer has created a hostile working climate which was so intolerable that the employee was forced to leave his or her employment." Syl. Pt. 4, *Slack v. Kanawha Co. Housing & Redevelopment Auth.,* 188 W. Va. 144, 423 S.E.2d 547 (1992).

12

find that they are sufficient for this count of the complaint to survive a motion to dismiss pursuant to Rule 12(b)(6).

Based on the foregoing, we find that Mr. Potter's complaint stated a sufficient basis upon which relief could be granted, and we conclude that the circuit court erred when it dismissed all counts of the complaint with prejudice. Accordingly, we reverse the circuit court's December 10, 2020 order and remand this case to the circuit court for further proceedings consistent with this decision.

Reversed and remanded.

**ISSUED:** May 27, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

Justice C. Haley Bunn did not participate in the decision of the Court.

13